**HIGHLAND PAVING CO., LLC v. FIRST BANK**

[227 N.C. App. 36 (2013)]

### III.  Conclusion

For the foregoing reasons, we affirm.

AFFIRMED.

Judges ELMORE and STEELMAN concur.

---

HIGHLAND PAVING CO., LLC, PLAINTIFF
v.
FIRST BANK AND SOUTHEAST DEVELOPMENT OF CUMBERLAND, LLC, DEFENDANTS

No. COA12-1297

Filed 7 May 2013

1. **Appeal and Error—interlocutory orders and appeals—certification—immediately appealable**

    The trial court's interlocutory order dismissing all claims against defendant First Bank was immediately appealable as the order resolved all claims against that defendant and the trial court certified under N.C.G.S. § 1A-1, Rule 54(b) that there was no just reason to delay the appeal.

2. **Contracts—breach of contract—exhibits contradicted allegations—no breach**

    The trial court did not err by dismissing plaintiff's breach of contract claim. Even assuming an enforceable contract between plaintiff and defendant First Bank existed, plaintiff's exhibits contradicted its allegations that defendant First Bank breached its agreement to hold proceeds from the sale of certain property at issue in escrow.

3. **Fiduciary Relationship—failure to allege—breach of fiduciary duty—constructive fraud**

    The trial court did not err by dismissing plaintiff's claims for breach of fiduciary duty and constructive fraud. Plaintiff failed to allege a relationship between it and defendant First Bank that could constitute a fiduciary relationship.

4. **Quantum Meruit—no unjust enrichment—claim properly dismissed**

HIGHLAND PAVING CO., LLC v. FIRST BANK

[227 N.C. App. 36 (2013)]

The trial court did not err by dismissing plaintiff's claim in *quantum meruit* where defendant was not enriched, much less unjustly enriched, from the transaction at issue.

**5. Unfair Trade Practices—no sales proceeds—no conversion—no deceit**

The trial court did not err by granting defendant First Bank's motion to dismiss plaintiff's claim for unfair and deceptive trade practices. As there were no sales proceeds to escrow from the transaction at issue, defendant First Bank could not have converted those funds to its own use by deceiving plaintiff about the existence of those funds.

Appeal by plaintiff from order entered on or about 25 June 2012 and 23 July 2012 by Judge Gregory A. Weeks in Superior Court, Harnett County. Heard in the Court of Appeals 28 March 2013.

*Ryan McKaig Attorney at Law, PLLC, by Ryan McKaig, for plaintiff-appellant.*

*Nexsen Pruet, PLLC, by M. Jay DeVaney and Brian T. Pearce, for defendant-appellee First Bank.*

STROUD, Judge.

Highland Paving Co., Ltd., ("plaintiff") appeals from the order granting First Bank's motion to dismiss all claims against it. Plaintiff argues that it properly pled all claims against First Bank and that therefore the trial court erred in granting its motion to dismiss. For the following reasons, we affirm the trial court's order in full.

I. Background

During the summer of 2008, plaintiff was hired by Southeast Development of Cumberland, LLC ("Southeast") to install utilities and perform grading and road construction for Southeast's development known as Green Valley. To finance the development, Southeast took out a loan from First Bank secured by a deed of trust on the Green Valley property, which was recorded in the Cumberland County Registry.

At some point after development began, Southeast was unable to pay for plaintiff's improvements to the land and plaintiff was unwilling to proceed with further construction until paid. To save the project, First Bank drafted an agreement wherein plaintiff agreed to forgo

payment until "the first 12 to 16 lots" were sold and all of plaintiff's work on the project was complete to the satisfaction of First Bank. Defendant Southeast agreed to forgo any proceeds from the "first takedown of [the] lots" and to provide all proceeds from that sale to First Bank to escrow until plaintiff completed its work and the first lots were sold. First Bank, in turn, agreed to "release the first takedown of lots" at a reduced fee "upon the condition that [First Bank] escrows and disburses all proceeds from the sale" to the contractors, including plaintiff.

The first eight lots were sold and plaintiff received its portion of the proceeds without incident. Plaintiff has alleged that defendants sold the remainder of Green Valley on 26 October 2011 without consulting plaintiff, but refused to compensate it for the outstanding amount on its construction costs, valued at $153,651.54. Plaintiff claims that First Bank "fail[ed] to escrow the funds and pay Plaintiff as agreed."

On 26 January 2012, plaintiff filed a complaint in Superior Court, Harnett County, alleging that defendants breached their contracts with plaintiff, that First Bank had engaged in constructive fraud, that it was entitled to compensation under a *quantum meruit* theory, and that both defendants had engaged in unfair and deceptive trade practices. Plaintiff attached several exhibits to its complaint, including: its initial project proposal for Green Valley; the original deed of trust securing First Bank's loan; the subsequent agreement between plaintiff and defendants; plaintiff's invoice for work completed on the project; the check for plaintiff's portion of the proceeds from the first eight lots; a general warranty deed transferring ownership of the rest of Green Valley to East West Alliance Northridge Park, Ltd. ("East West"); and a certificate of satisfaction recorded by East West cancelling the debt secured by the deed of trust originally recorded by First Bank.

First Bank moved to dismiss all claims against it on or about 28 February 2012. The Superior Court held a hearing and granted First Bank's motion by order entered 25 June 2012. The trial court also entered a supplemental order certifying that the order dismissing the claims against First Bank was a final order and that there is no just reason to delay an appeal. Plaintiff filed written notice of appeal to this Court on 24 July 2012.[1]

---

1. Plaintiff also noted the 23 July Rule 54(b) "supplemental order" in its notice of appeal, but makes no argument concerning that order.

## II. Interlocutory Order

[1] The order plaintiff appeals from resolves only the claims against First Bank. Plaintiff's claims against Southeast are still pending. Therefore, this order is an interlocutory order. *See Stinchcomb v. Presbyterian Medical Care Corp.*, ___ N.C. App. ___, ___, 710 S.E.2d 320, 323, *disc. rev. denied*, 365 N.C. 338, 717 S.E.2d 376 (2011). Normally, interlocutory orders are not immediately appealable. *Id.*

Here, however, the trial court certified that there is no just reason for delay under N.C. Gen. Stat. § 1A-1, Rule 54(b) (2011). It is uncontested that the order on appeal resolves all claims against First Bank.

> When an appeal is from an order that is final as to one party, but not all, and the trial court has certified the matter under Rule 54(b), this Court must review the issue. . . . As this appeal is from an order which is final as to some of the parties, and the trial court has properly certified the appeal pursuant to Rule 54(b), we must review the issue.

*Id.* at ___, 710 S.E.2d at 323 (citations and quotation marks omitted). We will therefore review the order based upon the Rule 54(b) certification.

## III. Motion to Dismiss

Plaintiff argues on appeal only that the trial court erred in dismissing all of its claims against First Bank because each claim was properly pled. First Bank argues that the trial court correctly dismissed all claims because the exhibits attached to and incorporated into plaintiff's complaint contradict its material allegations.

A.    Standard of Review

> On a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the standard of review is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief.

*Block v. County of Person*, 141 N.C. App. 273, 277–78, 540 S.E.2d 415, 419 (2000) (citations and quotation marks omitted).

> As a general proposition . . . matters outside the complaint
> are not germane to a Rule 12(b)(6) motion. . . . If, how-
> ever, documents are attached to and incorporated within
> a complaint, they become part of the complaint. They may,
> therefore, be considered in connection with a Rule 12(b)
> (6) or 12(c) motion without converting it into a motion for
> summary judgment.

*Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 203-04,
652 S.E.2d 701, 707 (2007) (citation omitted). "The terms of such exhibit
control other allegations of the pleading attempting to paraphrase or
construe the exhibit, insofar as these are inconsistent with its terms."
*Wilson v. Crab Orchard Development Co.*, 276 N.C. 198, 206, 171 S.E.2d
873, 879 (1970); *see Hall v. Sinclair Refining Co.*, 242 N.C. 707, 711, 89
S.E.2d 396, 399 (1955) ("The contracts, incorporated in the complaint by
amendment, have neutralized the allegations of the original complaint
and put to naught the cause of action asserted therein. Such variance or
defect may be raised by demurrer." (citations omitted)).

B. Breach of Contract

**[2]** Plaintiff first contends that it properly pled a breach of contract.

> The elements of a claim for breach of contract are (1)
> existence of a valid contract and (2) breach of the terms
> of the contract. This Court has held that where the com-
> plaint alleges each of these elements, it is error to dismiss
> a breach of contract claim under N.C. Gen.Stat. § 1A-1,
> Rule 12(b)(6).

*McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005)
(citation, quotation marks, and brackets omitted), *disc. rev. denied*,
360 N.C. 290, 627 S.E.2d 621 (2006). We will first examine what plaintiff
alleged, and then what the documents attached to the complaint show.

In its complaint, plaintiff alleged that there was a contract between it
and defendants wherein it agreed to forgo payment until the first twelve
to sixteen lots were sold and First Bank agreed to receive the funds from
the sales, hold those proceeds in escrow, and distribute them to plain-
tiff once the lots were sold. Plaintiff alleged that defendant Southeast
has sold several lots without notifying plaintiff and that First Bank has
breached its agreement to hold those proceeds in escrow.

First Bank argues that we should affirm the trial court's order as to
the breach of contract claim for two reasons. First, the alleged contract
attached to plaintiff's complaint was never signed by any representative

of First Bank. Next, even if the unsigned contract is valid, the other documents attached to the complaint show that First Bank did not breach the contract. We hold that, even assuming the agreement between plaintiff and First Bank was an enforceable contract, plaintiff's exhibits contradict its allegations as to breach.

Plaintiff alleged that Southeast sold the subject property on 26 October 2011, that the bank received the proceeds from the sale, and then failed to disburse the funds as required under the contract. Plaintiff attached to its complaint the original deed of trust in which defendant Southeast was the grantor and First Bank was the beneficiary and holder of the debt.

On 26 October 2011, defendant Southeast deeded the remainder of the subject property to East West for $10.00 in exchange for cancellation of the debt secured by the deed of trust. East West recorded a certificate of satisfaction on 7 November 2011 certifying that it owned the debt and cancelling the deed of trust. There is no allegation that East West is a subsidiary of First Bank or otherwise affiliated with it. Thus, it appears that at some later date, First Bank sold or otherwise transferred its interest in the debt and the property to East West, who is not a party to the present action.

Although plaintiff described this transaction as a "sale," the documents attached to the complaint indicate that there were no "proceeds" from this transaction, as the plain language of the exhibits show that property was transferred in satisfaction of a debt obligation, not in exchange for money. If there were no "proceeds," First Bank could not be under any contractual obligation to ensure that they were escrowed for plaintiff's benefit and could not have breached the contract as alleged. The obvious risk inherent in plaintiff's agreement to accept future "sales proceeds" from the lots in payment of Southeast's debt was that there might ultimately be no sales proceeds; unfortunately for plaintiff, that is exactly what happened.

Plaintiff relies solely on this transaction in its allegation that First Bank breached the contract. The exhibits attached to plaintiff's complaint contradict its material allegations as to First Bank's breach of the contract because they show that there would not have been proceeds for First Bank to escrow and convert for its own use in breach of the contract. The exhibits attached to the complaint "reveal[] the absence of facts sufficient to make a good claim." *Burgin v. Owen*, 181 N.C. App. 511, 512, 640 S.E.2d 427, 429 (2007) (citation and quotation marks

omitted). Therefore, we hold that the trial court did not err in granting First Bank's motion to dismiss the breach of contract claim.

C.   Breach of Fiduciary Duty and Constructive Fraud

[3] Plaintiff next argues that the trial court erred in dismissing its claim that First Bank breached its fiduciary duty and that it engaged in constructive fraud. These allegations arise out of the same contract and transaction discussed above. Plaintiff alleged that it placed trust and confidence in First Bank.

> To establish constructive fraud, a plaintiff must show that defendant (1) owes plaintiff a fiduciary duty; (2) breached this fiduciary duty; and (3) sought to benefit himself in the transaction. A confidential or fiduciary relation can exist under a variety of circumstances and is not limited to those persons who also stand in some recognized legal relationship to each other. It extends to any possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other. Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the "special circumstance" of a fiduciary relationship has arisen. Determining whether a fiduciary relationship exists requires looking at the particular facts and circumstances of a given case.

*Crumley & Associates, P.C. v. Charles Peed & Associates, P.A.*, ___ N.C. App. ___, ___, 730 S.E.2d 763, 767 (2012) (citations, quotation marks, brackets, and ellipses omitted).

Plaintiff alleged that it "placed special trust and confidence in First Bank due to the written agreement, their priority lien position, the parties' previous dealings and due to the fact that the Bank is a professional fiduciary." It further alleged that the bank "promised payment to Plaintiff for work performed given the priority lien position." Plaintiff argues that First Bank owed it a fiduciary duty in part because "[t]he parties . . . in essence formed a partnership to complete the project[.]" Plaintiff did not allege, however, that the parties ever formed a formal partnership. *Cf.* N.C. Gen. Stat. §§ 59-101, *et seq.* (2011) (codifying the Revised Uniform Limited Partnership Act). It never alleged that First Bank ever agreed to represent its interests in the transaction or that some other special relationship existed between it and First Bank. The only relationship between plaintiff and the bank was that created by the contract wherein

the bank agreed to hold any proceeds from defendant Southeast's land sales in escrow and then distribute the proceeds to plaintiff upon inspection of the completed work.

"[P]arties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract . . . ." *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699, *disc. rev. denied*, 332 N.C. 482, 421 S.E.2d 350 (1992). "North Carolina courts generally find that parties who interact at arms-length do not have a fiduciary relationship with each other, even if they are mutually interdependent businesses." *Crumley & Associates, P.C.*, ___ N.C. App. at ___, 730 S.E.2d at 767 (citation omitted).

> Our review of reported North Carolina cases has failed to reveal any case [and plaintiff cites none] where mutually interdependent businesses, situated as the parties were here, were found to be in a fiduciary relationship with one another.

*Tin Originals, Inc. v. Colonial Tin Works, Inc.*, 98 N.C. App. 663, 666, 391 S.E.2d 831, 833 (1990). As in *Tin Originals*, "[w]e decline to extend the concept of a fiduciary relation to the facts of this case." *Id.*

Because plaintiff has failed to allege a relationship between it and First Bank that could constitute a fiduciary relationship, it cannot maintain its constructive fraud claim. *See Crumley & Associates, P.C.*, ___ N.C. App. at ___, 730 S.E.2d at 767. Therefore, the trial court did not err in granting First Bank's motion as to the constructive fraud claim. *See Burgin*, 181 N.C. App. at 512, 640 S.E.2d at 429.

D. *Quantum Meruit*

[4] Plaintiff next argues that it properly pled a claim in *quantum meruit* and that the trial court erred in dismissing this claim. First Bank counters that the trial court correctly dismissed the claim because plaintiff did not plead *quantum meruit* in the alternative to its breach of contract claim and that it failed to properly allege what "valuable service" First Bank received.

> To recover in *quantum meruit*, a plaintiff must show that (1) services were rendered to the defendant; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously. In addition, *quantum meruit* claims require a showing that both

parties understood that services were rendered with the expectation of payment.

*Wing v. Town of Landis*, 165 N.C. App. 691, 693, 599 S.E.2d 431, 433 (2004) (quotation marks, citations, and brackets omitted).

The claims of breach of contract and *quantum meruit* are normally pled in the alternative, since some of the allegations required for one claim are contrary to those required for the other; if there is a valid and enforceable contract, *quantum meruit* is not appropriate, and vice versa. *See Catoe v. Helms Const. & Concrete Co.*, 91 N.C. App. 492, 498, 372 S.E.2d 331, 335-36 (1988) (observing that recovery on an express contract theory precludes recovery in *quantum meruit* where both claims are based on the same subject matter). Yet we will construe the allegations of the complaint liberally and treat them as alternatively pled instead of as a contradiction within the allegations. *See Block*, 141 N.C. App. at 277, 540 S.E.2d at 419 ("The complaint must be liberally construed . . . ."); N.C. Gen. Stat. § 1A-1, Rule 8(e)(1) (2011) ("No technical forms of pleading or motions are required."). "While the concept of notice pleading is liberal in nature, a complaint must nonetheless state enough to give the substantive elements of a legally recognized claim or it may be dismissed under Rule 12(b)(6)." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 205, 367 S.E.2d 609, 612 (1988) (citation omitted).

Plaintiff alleged that First Bank received the benefit of its services by receiving the proceeds from the sale of the properties, as evidenced by the certificate of satisfaction. Although plaintiff did allege generally that it provided a valuable service to First Bank, it did not allege that First Bank profited from its services in any way other than from the 26 October transaction. "Where both general and specific allegations are made respecting the same matter, the latter control." *Burns v. Burns*, 4 N.C. App. 426, 430, 167 S.E.2d 82, 85 (1969) (citation omitted).

As discussed above, the certificate of satisfaction was not recorded by First Bank. The allegations do not even acknowledge that First Bank was not mentioned in any of the documents connected to the 26 October transaction. The allegations also do not reveal how First Bank could have profited or benefitted from the cancellation of the deed of trust by the new owner of defendant Southeast's debt.

Plaintiff's only theory of enrichment is premised on the allegation that First Bank received funds from a sale of property on 26 October 2011. As explained above, the exhibits attached to plaintiff's complaint contradict this allegation. "Without enrichment, there can be no 'unjust

enrichment' and therefore no recovery on an implied contract." *Wing*, 165 N.C. App. at 695, 599 S.E.2d at 434 (citation and quotation marks omitted). Thus, the complaint and the exhibits attached thereto "reveal[] the absence of facts sufficient to make a good claim." *Burgin*, 181 N.C. App. at 512, 640 S.E.2d at 429 (citation and quotation marks omitted). Accordingly, we hold that the trial court did not err in granting First Bank's motion to dismiss plaintiff's *quantum meruit* claim.

E. Unfair and Deceptive Trade Practices

**[5]** Plaintiff finally argues that the trial court erred in granting First Bank's motion to dismiss its claim for Unfair and Deceptive Trade Practices (UDTP).

> In order to establish a violation of N.C.G.S. § 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs. The determination of whether an act or practice is an unfair or deceptive practice that violates N.C.G.S. § 75-1.1 is a question of law for the court.

*Gray v. North Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000) (citations omitted).

Plaintiff bases its UDTP claim on "a secret transaction involving the land that was the subject of the original contract, and that First Bank converted escrowed funds for its own use while failing to pay Highland Paving for its work." It alleged that this act was an unfair or deceptive act or practice. Like all of plaintiff's other claims, this claim is based on the 26 October transaction.

Although plaintiff argues generally that First Bank "converted escrowed funds for its own use," it specifically conceded in its complaint that all funds due to it prior to 26 October were paid by First Bank. Thus, as with the other claims, this claim rests entirely on the allegation that First Bank received proceeds from the "sale" of the properties on 26 October.

As discussed above, this allegation is directly contradicted by the exhibits plaintiff attached to its complaint. If there were no sales proceeds from the 26 October transaction to escrow, First Bank cannot have converted those funds to its own use by deceiving plaintiff about the existence of those funds. Thus, the exhibits directly contradict plaintiff's allegation of an unfair or deceptive act. Perhaps, as plaintiff argues, there was some other "secret transaction" by which First Bank benefitted, but we cannot assume that First Bank engaged in some nefarious

plot when the complaint fails to identify it. Because the terms of an attached exhibit control over contrary allegations in the complaint, *Wilson*, 276 N.C. at 206, 171 S.E.2d at 879, we hold that plaintiff has failed to state a claim for unfair or deceptive trade practices. *See Gray*, 352 N.C. at 68, 529 S.E.2d at 681.

### IV. Conclusion

The exhibits attached to plaintiff's complaint contradict its material factual allegations such that plaintiff cannot maintain any of its claims against First Bank. Therefore, we hold that the trial court did not err in granting First Bank's motion to dismiss for failure to state a claim and affirm the 25 June 2011 order dismissing plaintiff's claims against First Bank.

AFFIRMED.

Judge ELMORE concurs.

Judge STEELMAN concurs in a separate opinion.

STEELMAN, Judge, concurring.

Based on the allegations contained in plaintiff's complaint, I am compelled to concur with the opinion in this case. It is not the duty of this Court to construct arguments for the parties on appeal. *See Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994).